UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ADAM BELL, individually and on behalf of a class of those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SHERIFF OF HENRY COUNTY, in his official capacity;<br>HENRY COUNTY, INDIANA<br><br>Defendants. | No. 1:19-cv-557 |

## CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

**Introduction**

1. The Henry County Jail is old, overcrowded, and understaffed, and as a result it is a place where violence between prisoners is common. Conditions there violate the requirements of the United States Constitution. Declaratory and injunctive relief should be issued to address and remedy these systemic problems.

**Jurisdiction**

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331 and 1343.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

4. Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2201, and by Rule 57 of the Federal Rules of Civil Procedure.

5. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

[1]

**Parties**

6. Adam Bell is an adult person who is currently confined in the Henry County Jail.

7. The office of the Henry County Sheriff is sued pursuant to Rule 25(d)(2) of the Federal Rules of Civil Procedure.

8. Henry County, Indiana is a county located in central Indiana. Its executive is the Henry County Commissioners and its fiscal body is the Henry County Council.

**Class action allegations**

9. This action is brought by plaintiff on his own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

10. The class is defined as:

   all persons currently confined, or who will in the future be confined, in the Henry County Jail.

11. All the requirements of Rule 23(a) are met in this cause in that:

   a. The class is so numerous that joinder of all members is impractical. The jail regularly houses more than 100 persons and the membership of the proposed class is constantly changing as prisoners enter and leave the facility.

   b. There are questions of law or fact common to the class: whether conditions in the Henry County Jail violate the United States Constitution.

   c. The claims of the representative party are typical of those of the class.

   d. The representative party will fairly and adequately protect the interests of the class.

12. The further requirements of Rule 23(b)(2) are met in this cause as at all times defendants have acted or have refused to act in a manner generally applicable to the class,

thereby making final injunctive and declaratory relief appropriate with respect to the class as a whole.

13. Undersigned counsel is an appropriate person to be appointed as counsel for the class pursuant to Federal Rule of Civil Procedure 23(g) and should be appointed.

**Legal background**

14. Indiana law provides that the sheriff of a county must "take care of the county jail and the prisoners there." Ind. Code § 36-2-13-5(a)(7).

15. The county commissioners of each Indiana county, as the county executive, have the statutory duty to "establish and maintain a . . . county jail." Ind. Code § 36-2-2-24(a). This includes not only providing a jail, but also keeping it in good repair. *Weatherholt v. Spencer County,* 639 N.E.2d 354, 356 (Ind. Ct. App. 1994).

**Factual allegations**

16. The Henry County Jail was built in 1980.

17. When opened the rated capacity of the Jail was 78.

18. The Jail is linear in structure with various sized cell blocks containing individual cells.

19. As originally constructed, the cells that were designed to house more than one prisoner had double beds, on top of each other like bunk beds.

20. A number of years ago the Jail added an additional bed on top of many of the existing double beds to triple bunk the cells, so that there are currently 116 permanent beds in the Jail.

21. Under Indiana law, county jails are periodically inspected by the Indiana

Department of Correction ("DOC") jail inspectors. In the most recent inspection report by the DOC's chief jail inspector, who has the title of Executive Liaison – Sheriff and County Jail Operations, the DOC official noted that "there was an additional 3rd bunk placed in each cell a number of years ago. However, there does not exist a letter from the Chief Jail Inspector authorizing the adding of these beds/bunks . . . . Based upon the original design the jails rated capacity should 76 beds versus 116 beds."

22. In an attempt to remedy some of the population pressures on the Jail, Henry County in 2018 converted a work-release facility near the Jail into a Jail Annex that can house up to 100 prisoners.

23. A jail facility is deemed to be overcrowded long before it gets to 100% of capacity.

24. This is because when a jail exceeds 80% of its capacity, and under certain circumstances less than that percentage of capacity, it becomes difficult, if not impossible, to conduct classification of prisoners much beyond separating men and women.

25. Classification is essential to protect the safety of both prisoners and staff. For example, prisoners with mental and physical disabilities should be separated from those without those disabilities, prisoners who are prone to be preyed upon should be separated from predators, prisoners who have previous problems with each other should be separated, etc.

26. At the current time the Henry County Jail is deemed to be overcrowded 100% of the time by the DOC's jail inspector.

27. Despite the opening of the Jail Annex, the Henry County Jail is continuously overcrowded.

28. As a result of the overcrowding, some blocks have prisoners who are sleeping on cell floors. This causes a great deal of tension, as the blocks which are triple bunked already have more prisoners confined than the space was designed for. Toilets are in each cell and when prisoners are on the floor they have to be stepped over to use the toilets and are forced to sleep near the toilets.

29. The Jail has an outside and inside recreation area. However, the facility is so overcrowded that the one indoor recreation area is frequently used to house prisoners, even though there are no toilets or showers in the recreation area.

30. The Jail is linear in structure and there is inadequate audio and video surveillance equipment within the Jail to monitor the prisoners. Therefore, in order for the safety of prisoners to be assured, there must be frequent inspections by Jail staff.

31. These frequent, and necessary, cell-block inspections do not occur, in part because the Jail is chronically understaffed.

32. There is insufficient staff to monitor the prisoners.

33. As a result, assaults between prisoners are frequent, aggravated by the overcrowded conditions.

34. Additionally, if prisoners are in medical or other forms of distress, it is difficult if not impossible to get prompt attention from guards.

35. Adam Bell has been incarcerated in the Henry County Jail since December 21, 2018. He was previously incarcerated from early August to mid-September in 2017 and for approximately ten days in 2018.

36. He is currently incarcerated on an alleged violation of home detention rules that

were imposed after his conviction of a criminal offense.

37. For approximately four weeks he has been confined in E-Block in a cell that is triple bunked.

38. At the current time there are four people in his cell. There is one person sleeping on the floor. For the first two weeks he was the fourth person in the cell and was on the floor on just a mattress.

39. The cell block is extremely dirty.

40. In total there are thirteen persons in E-Block in cells that contain twelve permanent bunks. The top bed in the triple bunk is extremely close the ceiling and is uncomfortable.

41. Correctional officers rarely check in on his cell block.

42. He has seen prisoners fighting because of the tensions on the block.

43. During a prior incarceration in the Jail, he watched an older man be beaten so badly that he had to be hospitalized. Staff was not present to intervene.

44. During a prior incarceration in the Jail, someone in his cell started a fire and no correctional officer came until a few hours later, by which time the block had been filled with smoke.

45. Two weeks ago prisoners had seizures in his cell on the block. There was no staff around, and plaintiff and other prisoners had to kick the wall for ten minutes before staff responded.

46. During his most recent incarceration, his cell block has not been offered any recreation outside of the cell block.

47. The block is locked down daily from 11 p.m. to 6 p.m.

48. Because of being locked down for all but a few hours a day and the number of prisoners in the cell block, it is impossible to exercise in the block.

49. Recreation outside of the cell area is necessary so prisoners can "blow off steam" and minimize the tension that can lead to violence.

50. The lack of recreation, the overcrowding, and the lack of staff supervision causes continuous tension and dangerous conditions in the block.

51. Mr. Bell is concerned not only for his own safety, but for other prisoners who are similarly injured by the conditions in the Jail. He believes that all prisoners are negatively affected by the overcrowding, lack of sufficient staff, conditions in the cells, lack of recreation, and the problems that all this causes.

52. On information and belief, Henry County Jail has a grievance system set out in an Inmate Handbook, although Mr. Bell has never been given a copy of the Handbook and has never seen a copy of the grievance procedure.

53. Other litigation has established that the Inmate Handbook specifically provides that a grievance can only address matters that are in the control of the facility. *See Baker v. McCorkle*, No. 1:16-cv-3026-JMS-MPB, 2017 WL 971371, at *2 (S.D. Ind. Mar. 14, 2017).

54. The persistent overcrowding, lack of staff, and lack of recreation because of the overcrowding are all matters that are not within control of the facility. These matters therefore do not have to be grieved under the Prison Litigation Reform Act. *See Booth v. Churner*, 532 U.S. 731, 736 (2001).

55. Nevertheless, Mr. Bell has requested that he be given grievance forms on a number of occasions from a number of jail officers so he could formally complain about

overcrowding, the lack of recreation, the dirty and dangerous conditions in the cell block and medical issues.

56. With one exception he has not been given grievance forms when they have been requested. On one occasion an attorney (not undersigned counsel) requested, in Mr. Bell's presence, that he receive a grievance form so he could get necessary medical care. He did receive that one. He filled it out but was told by medical staff that it was never received.

57. When he first entered the Jail on this most recent occasion he spent approximately 24 hours in the drunk tank, although he was not intoxicated. There were twelve people there, all laying on the floor in overcrowded conditions.

58. He was then moved, for an approximate three-week stay in a lockdown cell in E - block, although he had not committed a disciplinary offense, and there were no other grounds to make lockdown appropriate of which he is aware. He was eventually visited by a jail officer who gave him a grievance form and told him he had to sign it to be moved, so he did. He had previously asked for grievance forms for being in lockdown, but he had not received one.

59. Other than this, he has not been provided with grievance forms despite requesting them on numerous occasions.

60. He has witnessed other prisoners ask for grievances from jail personnel and has seen these prisoners not receive grievance forms.

61. The grievance will not be processed unless it is on the Jail's form.

62. Plaintiff was therefore unable to file grievances.

63. Therefore, with the exception of his medical needs, for which his attorney was able

[8]

to obtain a grievance form for him, the grievance process was not "available" to him as that term is used in the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

64. Defendants have been on notice for some time concerning the deficiencies in the Jail but have failed to take the necessary steps to resolve the overcrowding and other problems. At all times they have acted in a deliberate and purposeful manner.

65. A recent report done by a consultant employed by Henry County notes the problematic conditions at the Jail by reporting:

- "The jail is designed as a linear facility, with rows of cells adjacent to a corridor or dayroom, a design that limits the ability of staff to effectively supervise and observe inmates."

- "The crowded jail and the jail's physical plan have required that inmates be assigned to portable bunks on the floor."

- "The jail's physical plant, exacerbated by overcrowding, does not permit the jail to safely house inmates or provide for certain needs. Jails must have the ability to classify inmates into risk and need classifications . . . . The current physical plant does not lend itself to the separations required to safely house inmates."

66. The report by the consultant notes that the Henry County Criminal Justice Coordinating Committee, which consists of numerous persons including the Henry County Sheriff, a member of the Henry County Commissioners, and a member of the Henry County Council, recognized in 2013 "that the jail could no longer provide effective or safe housing for inmates. The facilities were overcrowded with no ability to manage the overcrowding, the observation of inmates was almost non-existent due to facility design that resulted in unsafe and unobservable areas, and it was no longer possible to maintain the facilities and correct physical plant deficiencies."

67. These conditions still prevail in the Jail today.

68. The conditions in the Henry County Jail result in the denial of basic human needs and the minimal civilized measures of life's necessities and amount to punishment.

69. Henry County has failed in its mandatory duty to establish and maintain the Henry County Jail in a constitutional manner.

70. Defendant Sheriff has failed in his mandatory duty to take care of the Henry County Jail and the prisoners detained there in a constitutional manner.

71. The actions and inactions of the defendants are causing plaintiff and the putative class irreparable harm for which there is no adequate remedy at law.

72. At all times defendants have acted and have refused to act under color of state law.

**Claim for relief**

73. The conditions of the Henry County Jail violate the 14th Amendment to the United States Constitution as applied to pre-trial detainees and the 8th Amendment to the United States Constitution as applied to convicted prisoners.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1. Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2. Certify this case as a class action with the class as defined above.

3. Declare that the actions and inactions of defendants violate the United States Constitution for the reasons noted above.

4. Enter a preliminary injunction, later to be made permanent, requiring defendants to take all steps necessary to ensure that the conditions of confinement

at the Henry County Jail comply with the United States Constitution.

5.     Award plaintiff costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

6.     Award all other proper relief.

> Kenneth J. Falk
> No. 6777-49
> ACLU of Indiana
> 1031 E. Washington St.
> Indianapolis, IN 46202
> 317/635-4059
> fax: 317/635-4105
> kfalk@aclu-in.org
>
> Attorney for Plaintiff and the
> Putative Class